ACCEPTED
01-14-00366-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/28/2015 10:02:56 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00366-CR

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/28/2015 10:02:56 PM
CHRISTOPHER A. PRINE
Clerk

**In The Court of Appeals
For The First
Judicial District of Texas
Houston, Texas**

CHRISTOPHER WASHINGTON, APPELLANT

VERSUS

THE STATE OF TEXAS, APPELLEE

ON APPEAL FROM THE 178TH
JUDICIAL DISTRICT COURT
HARRIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. 1259853

APPELLANT'S BRIEF

WENDELL A. ODOM JR.
TEXAS BAR # 15208500
440 LOUISIANA ST., STE 200
HOUSTON, TEXAS 77002
(713) 223-5575
(713) 224-2815 [FAX]

ATTORNEY FOR APPELLANT
CHRISTOPHER WASHINGTON

[ORAL ARGUMENT REQUESTED]

## IDENTITY OF PARTIES AND COUNSELS

**Christopher Washington**                    Appellant

**State of Texas**                            Appellee

**Wendell A. Odom, Jr.**                      Appellate Counsel

440 Louisiana St., Ste 200
Houston, Texas 77002


**Patrick McCann**                            Trial Counsel

909 Texas Avenue, Ste 205
Houston, Texas 77002


**Devon Anderson**                            District Attorney on
                                              Appeal
1201 Franklin St., Ste 600
Houston, Texas 77002

**Maritza Antu**                              Assistant District
                                              Attorney at Trial
1201 Franklin St., Ste 600
Houston, Texas 77002

# TABLE OF CONTENTS

PAGE

IDENTITIES OF PARTIES AND COUNSELS ...................................................................... i
TABLE OF CONTENTS ....................................................................................................... ii
INDEX OF AUTHORITIES ................................................................................................. iii
STATEMENT OF THE CASE ................................................................................................. 1
STATEMENT REGARDING ORAL ARGUMENT ................................................................... 2
QUESTIONS PRESENTED ..................................................................................................... 3
STATEMENT OF FACTS........................................................................................................ 3
SUMMARY OF THE ARGUMENT ......................................................................................... 8
ARGUMENT AND AUTHORITIES ......................................................................................... 9

    I.      ISSUE 1 – WHETHER THE APPELLANT WAS DENIED DUE PROCESS WHEN THE
           TRIAL COURT REFUSED TO ALLOW THE DEFENDANT TO OBTAIN THE
           ASSISTANCE OF AN EXPERT.
           A. RULE OF LAW ................................................................................. 9
           B. TEST UNDER TEXAS PENAL CODE § 7.02(B) ................................... 13
           C. TEST UNDER MOTION TO SUPPRESS.................................................. 21
           D. CONCLUSION .................................................................................. 27

    II.     ISSUE II – WHETHER THE TRIAL COURT ABUSED THEIR DISCRETION WHEN
           THEY DENIED THE APPELLANT A HEARING ON HIS MOTION FOR NEW TRIAL.
           A. RULE OF LAW ................................................................................. 29
           B. TRIAL COURT ABUSED ITS DISCRETION.......................................... 30
           C. CONCLUSION .................................................................................. 39

    III.    ISSUE III – WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT
           DENIED THE APPELLANT'S REQUEST FOR A COMPETENCY TRIAL UNDER
           TEXAS CODE OF CRIMINAL PROCEDURE 46B.
           A. RULE OF LAW ................................................................................. 41
           B. TRIAL COURT ABUSED ITS DISCRETION.......................................... 43
           C. CONCLUSION .................................................................................. 46

PRAYER FOR RELIEF........................................................................................................ 47
CERTIFICATE OF SERVICE .............................................................................................. 47

# INDEX OF AUTHORITIES

## CASES

*Ake v. Oklahoma*, 470 U.S. 68 (1985) .................................................9-12, 19-23, 28, 31-34, 36, 40

*Anderson v. State*, 416 S.W.3d 884 (Tex. Crim. App. 2013) .....................................................13

*Brewer v. Williams*, 430 U.S. 387 (1977)..............................................................................21

*Fare v. Michael C.*, 442 U.S. 707 (1979) ..............................................................................21

*Gallo v. State*, 239 S.W.3d 757 (Tex. Crim. App. 2007)........................................................35

*Gonzales v. State*, 304 S.W.3d 838 (Tex. Crim. App. 2010).............................................. 35-38

*Heiselbetz v. State*, 906 S.W.2d 500 (Tex. Crim. App. 1995)................................................35

*Johnson v. Zerbst*, 304 U.S. 458 (1938) ...............................................................................22

*McDaniel v. State*, 98 S.W.3d 704 (Tex. Crim. App. 2003)....................................................41

*McIntire v. State*, 698 S.W.2d 652 (Tex. Crim. App. 1985).............................................. 29-30

*Miranda v. Arizona*, 384 U.S. 436 (1966) ....................................... 13, 21-22, 24, 28, 33

*Moore v. Kemp*, 809 F.2d 702 (11th Cir. 1987)......................................................................12

*Moran v. Burbine*, 475 U.S. 412 (1986) ...............................................................................21

*Morris v. State*, 301 S.W.3d 281, 286-87 (Tex. Crim. App. 2009). ........................................45

*Oursbourn v. State*, 259 S.W.3d 159 (Tex. Crim. App. 2008) ......................................... 22-23

*Pinkerton v. United States*, 328 U.S. 640 (1946)..............................................................14, 16

*Rey v. State*, 897 S.W.2d 333 (Tex. Crim. App. 1995).................................................. 9-12, 30, 33

*Reyes v. State*, 849 S.W.2d 812 (Tex. Crim. App. 1993) .......................................................30

*Smith v. State*, 286 S.W.3d 333 (Tex. Crim. App. 2009).......................................................29

*State v. Edwards*, 868 S.W.2d 682, 698 (Tenn. Crim. App. 1993).........................................12

*State v. Evans*, 843 S.W.2d 576 (Tex. Crim. App. 1992).......................................................29

*State v. Read*, 965 S.W.2d 74 (Tex. App.—Austin 1998) ......................................................29

*Taylor v. State*, 163 S.W.3d 277 (Tex. App.—Austin 2005)...................................................32

*Trevino v. State*, 565 S.W.2d 938 (Tex. Crim. App. 1978) .....................................................30

*Turner v. State*, 422 S.W.3d 676 (Tex. Crim. App. 2013)..............................................41-42, 45-46

*U.S. v. O'Campo*, 973 F.2d 1015 (1st Cir. 1992) ...................................................................14

*Williams v. State*, 235 S.W.3d 742 (Tex. Crim. App. 2007)...................................................14

## STATUTES

Tex. Code Crim. Proc. Ann. Art. 38.22 ........................................................................... 22-24

Tex. Code Crim. Proc. Ann. Art. 46B.003(a)......................................................................41, 45

Tex. Code Crim. Proc. Ann. Art. 46B.004(c) (Vernon Supp. 2006) ........................................42

Tex. Code. Crim. Proc. Ann. Art. 46B.051(a) ......................................................................7, 42

Texas Penal Code § 7.02(b)....................................................13-14, 16-19, 19-20, 28

Texas Penal Code § 6.03(c) ...................................................................................................14

Tex. R. App. Proc. 21.3 ........................................................................... 29, 32-33, 36, 40

Tex. R. App. Proc. 21.7 ..........................................................................................................29

No. 01-14-00366-CR

---

In The Court of Appeals
For The First
Judicial District of Texas
Houston, Texas

---

CHRISTOPHER WASHINGTON, APPELLANT

VERSUS

THE STATE OF TEXAS, APPELLEE

---

ON APPEAL FROM THE 178TH
JUDICIAL DISTRICT COURT
HARRIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. 1259853

---

APPELLANT'S BRIEF

---

TO THE HONORABLE JUSTICES OF SAID COURT:

COMES NOW, CHRISTOPHER WASHINGTON, Appellant in the above styled and numbered cause and would respectfully show the Court as follows:

## PRELIMINARY STATEMENT

This is an appeal from a conviction for CAPITAL MURDER after a jury trial in which the Appellant was found guilty. The court assessed punishment at life in prison with no possibility of parole.

1

On July 16, 2010, Appellant was indicted in cause number 1259853 for the offense of Capital Murder, a capital felony, in violation of Texas Penal Code § 19.03. CR-11[1]. On April 8, 2014, jury trial commenced in this cause. On April 10, 2014, the jury found the Appellant guilty of Capital Murder. CR-148. The State of Texas did not seek the death penalty in this cause, and thus, on April 10, 2014, the Court sentenced the Appellant to life in prison with no possibility of parole. CR-148. The Appellant gave timely notice of appeal on April 10, 2014. CR-156.

## STATEMENT REGARDING ORAL ARGUMENT

APPELLANT RESPECTFULLY REQUESTS ORAL ARGUMENT

---

[1] CR refers to the Clerk's Record followed by the page number. Thus CR-3 refers to the Clerk's Record, page 3. RR refers to the Reporter's Record followed by the volume number then the page number. Thus RR1-12 refers to the Reporter's Record, Volume 1, page 12.

## QUESTIONS PRESENTED

1. Whether the Appellant was denied Due Process when the Trial Court refused to allow the Appellant to obtain the assistance of a psychological expert?

2. Whether the Trial Court abused its discretion when it denied the Appellant a hearing on his motion for new trial?

3. Whether the Trial Court abused its discretion when it denied the Appellant's request for a competency trial under Texas Code of Criminal Procedure 46B?

## STATEMENT OF FACTS

### A. Background

Mr. Washington was born and raised in Houston, Texas with his mother and cousin, Jamie Austin. At four or five years of age, Mr. Washington was hit by a taxicab while riding his bicycle through his neighborhood. RR2-21. Mr. Washington was hospitalized for two days for injuries that were sustained to his head. RR20-21. After this event, Mr. Washington was never quite the same. He was always slower than the other kids in the neighborhood, and struggled to make passing grades in school. RR4-63. Mr. Washington had attended public schools in Houston, but never obtained a high school diploma or GED. RR2-9, CR-165. This intellectual slowness affected Mr. Washington throughout his life as he continued to live with family assistance at the age of 39. RR4-66. Mr. Washington lived with his mother from the time he was born until his conviction in this case. RR2-23. Simple tasks, such as writing a check or paying a bill, took a ton of concentration for Mr. Washington. RR2-26. He struggled to maintain jobs as simple instructions needed to be repeated multiple times, and Mr. Washington would still complete the tasks incorrectly. RR2-

3

36-37. In his adulthood, Mr. Washington is viewed by those that know him best as still being a child that needed constant adult supervision to function. RR4-66. Mr. Washington continues to struggle with all of these issues today.

## B. The Capital Murder Case

On the night of April 18, 2010, Mr. Washington was at his home in Houston, Texas visiting with his sister, Narsha Washington ("Narsha").[2] Narsha was dating a co-conspirator in this case, Robert Castillo ("Flaco"). At some point that night, Flaco came by Mr. Washington's home to visit with Narsha. During his visit, Flaco asked Mr. Washington if he wanted to go for a ride with him and Flaco's brother, Francisco Castillo ("Junior"). Mr. Washington obliged and went with Flaco and Junior. Junior was driving Flaco's car, and Mr. Washington and Flaco were in the back seat. During this trip, the three men saw the victim, David Rodriguez ("Mr. Rodriguez"), driving in his White Cadillac in North Houston. Mr. Rodriguez's car had expensive rims and a sound system that caught the three men's attention. Flaco decided that he was going to rob Mr. Rodriguez. Mr. Washington and Junior agreed to participate in the robbery.

Junior pulled up behind Mr. Rodriguez's car in front of a house in North Houston. Flaco got out of his car, jumped into Mr. Rodriguez's car, and drove himself and Mr. Rodriguez to a secluded area off of T.C. Jester and Fallbrook in North Houston. Mr. Washington and Junior followed Flaco and Mr. Rodriguez to the location in Flaco's car. When the three defendants and the victim arrived at the location off of T.C. Jester, Mr. Washington and Junior began going through Mr. Rodriguez's car. Mr. Washington and

---

[2] This entire section "B – Capital Murder Case" comes from the confession of the Appellant. This confession is State's Exhibit 3A. The Reporter's Record contains the entire confession, but they are in different audio files and meshed together. This makes it impossible to reference in any clear manner other than to reference the exhibit as a whole.

4

Junior started taking speakers out of Mr. Rodriguez's Cadillac and placing them in Flaco's car. While Mr. Washington was carrying the speakers to Flaco's car, he heard a gunshot. When he turned around he realized that Flaco had fatally wounded Mr. Rodrgiuez in the grassy area next to Mr. Rodriguez's car.

Mr. Washington and Junior began to panic as killing Mr. Rodriguez was not part of the agreement that night. Scared for his own well-being, Mr. Washington jumped into Mr. Rodriguez's car and fled from the scene. About one half mile from the crime scene, Officer Bilinovich spotted Mr. Rodriguez's Cadillac running a stop sign. Officer Bilinovich attempted to pull over Mr. Washington for this violation, and Mr. Washington fled from the officer. Moments later, Mr. Washington was taken into custody for evading arrest in a motor vehicle.

On the morning of April 19, 2010, officers with the Harris County Sheriff's Office met with Mr. Washington in relation to the murder of Mr. Rodriguez. Mr. Washington confessed to his role in the crime, and gave information linking Flaco and Junior to the crime as well. Mr. Washington was indicted for Capital Murder on July 16, 2010 in Harris County, Texas.

C. Intellectual Disability - Procedure

In the days leading up to trial, Trial Counsel noticed that Mr. Washington was having trouble assisting in building his defense to the charges. CR-165, CR-142-143. Notably, he was unable keep a coherent timeline of facts, agreed with anything that was told to him, and struggled to solve simple arithmetic in preparation for his case. *Id.* Trial Counsel had asked Mr. Washington about his mental health in the beginning of his representation and nothing had been revealed at that time. *Id.* Concerned about Mr.

5

Washington's inability to consult with his attorney about his defense, Trial Counsel confronted Mr. Washington's family about these newly appearing issues. *Id.* Mr. Washington's family disclosed the incident where Mr. Washington suffered head injuries when he was hit by a taxicab as a child, and his intellectual slowness throughout his life, at that time. *Id.* They admitted that they had not advised Trial Counsel previously because they were embarrassed, and didn't want Mr. Washington to be viewed as "crazy". *Id.* Trial Counsel became concerned that Mr. Washington was suffering from an intellectual disability and further, may not be competent to stand trial.

Trial started on April 7, 2010. On that day, Trial Counsel filed Appellant's Motion for an Intellectual Disability and Competency Evaluation and an accompanying Motion for Continuance in order to have the evaluation performed. CR-130. The Trial Court conducted two hearings regarding this motion. The first hearing was in front of Judge Wilkinson, a visiting judge in the 178th District Court. RR2. During this hearing, Mr. Washington's family testified to his issues delineated in the background section above – notably, Mr. Washington's accident when he was 4-5 years old, and his consistent intellectual slowness since that time. *See* RR4. Judge Wilkinson denied the Appellant's Motion for an Intellectual Disability and Competency Evaluation at that time. RR4-80.

A second hearing was held the following day on April 8, 2010 in front of a second visiting judge, Judge Mallia, regarding the Appellant's motion for an evaluation and short continuance. RR4. Judge Mallia also presided over the trial for Capital Murder. In the second hearing, one member of Mr. Washington's family came forward to expound on Mr. Washington's low intelligence that had been discussed the day before. *See* RR4. Trial Counsel also advised the Court that Mr. Washington was unable to assist in Voir

6

Dire on April 7, 2010, and detailed the usefulness of this evaluation for challenging the motion to suppress and the foreseeable element of party liability. RR2-5-11. Trial Counsel discussed with the Trial Court that he would need only a few days to conduct the evaluation, and provided a neuropsychologist who was available to conduct the examination immediately. RR4-7. Visiting Judge Mallia denied the Motion for an Intellectual Disability and Competency Evaluation, and wanted the trial to go forward as planned. RR4-80.

On April 9, 2010, prior to the prosecution publishing Mr. Washington's confession, Trial Counsel moved again for an intellectual disability evaluation and a continuance to allow the evaluation to occur. RR6-46-50. Trial Counsel again notified the Trial Court that they had a neuropsychologist, Shawanda Anderson, available to do the evaluation. In support, Trial Counsel noted that he is re-urging now as the evaluation could be valuable to the admissibility of the statement, and to Mr. Washington's decision to testify. RR6-46-50. Trial Counsel admitted the affidavit of his co-counsel at this time revealing some of the issues he had noticed while attempting to work with Mr. Washington in preparation for trial. RR6-46-5, CR-142-143. Further, Trial Counsel filed Appellant's Motion for a Contested Competency Trial under 45B.003 and 46B.051 of the Texas Code of Criminal Procedure at this time. RR6-46-50. All motions were denied by the Trial Court once again. RR6-50.

## SUMMARY OF THE ARGUMENT

Appellant filed a Motion for an Intellectual Disability and Competency Evaluation in this case prior to trial. After two hearings, the Trial Court denied the Appellant's access to an expert that could assist the Appellant in building a defense to the Capital Murder charges. The Trial Court again denied this request when Appellant moved for the evaluation prior to the admission of his confession that was made to investigators in this case. This denial of access to expert assistance violated the Appellant's Due Process rights to the basic tools necessary to build a defense. These rulings by the Trial Court called into question the fundamental fairness of the trial, and thus, the case should be remanded for a new trial on the merits.

Appellant also filed a Motion for a Contested Competency Trial pursuant to 46B of the Texas Code of Criminal Procedure. Prior to the Trial Court's ruling, Appellant placed a variety of evidence before the Trial Court that pointed to Appellant's inability to assist in building his defense – notably that Appellant did not have the sufficient present ability to consult with Trial Counsel with a reasonable degree of rational understanding. The Trial Court abused its discretion when it found that the evidence put forward was not more than a scintilla, and thus, denied Appellant's Motion for a Contested Competency Trial.

WHETHER THE APPELLANT WAS DENIED DUE PROCESS WHEN THE COURT REFUSED TO ALLOW THE APPELLANT TO OBTAIN THE ASSISTANCE OF A PSYCHOLOGICAL EXPERT

## ARGUMENT AND AUTHORITIES

### a. Rule of Law

Due Process under the United States Constitution requires that a defendant have access to the basic raw materials integral to building an effective defense. *Ake v. Oklahoma*, 470 U.S. 68, 105 (1985). These basic raw materials include the help of a defense expert. *Id.* The important question when deciding if an expert is needed, is how important the scientific issue is in the case and how much help the defense expert will be to the defendant's case. *Rey v. State*, 897 S.W.2d 333, 338 (Tex. Crim. App. 1995).

A defendant is entitled to expert assistance if the defendant establishes a substantial need and that the fundamental fairness of a trial is called into question without that assistance. *Rey*, 897 S.W.2d 333, 338. There are three factors the courts look at when considering whether a Defendant is entitled to the assistance of an expert. *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). The first factor is the private interest that is at stake. *Id.* The private interest of the defendant lies in the accuracy of the outcome of a criminal trial. *Id.* at 78. This private interest of the defendant is "obvious and weighs heavily" due to the potential for loss of liberty. *Id.* at 105. The second factor is the interest of the State. *Id.* The State's only interest is judicial economy. *Id.* The Court has found that this interest is "not substantial" in light of the Defendant's and the State's interest in the accuracy of criminal proceedings. *Id.* at 79. The third factor looks at how important the expert testimony will be to the Defendant in building an effective defense as well as to

9

the factfinder in resolving issues in the case. *Id.* The Courts use the three factor test to determine when an expert is important enough to building a defense that access is required. *Rey,* 897 S.W.2d 333, 337. The Court notes that a Defendant may be devastated by the absence of psychiatric testimony; while with that testimony they would have a reasonable chance of success. *Ake,* at 83.

## b. Three Part Test in *Ake*

Though the facts in *Ake* related to the aid of a psychiatric expert for the insanity defense, Texas Courts have expanded the *Ake* decision to all expert assistance. *Rey,* at 338. The Due Process test merely leans on the question of fundamental fairness calculated by weighing three factors: 1) the private interest at stake, 2) the interest of the state, and 3) the importance of testimony in building a defense and aiding the factfinder. *Id.* at 337-38.

### 1. Private Interest

The Defendant in this case was charged with Capital Murder, and was facing a life sentence without the possibility of parole if convicted. The Courts have consistently held that a Defendant facing any charge has a substantial interest in the accuracy of the proceedings. The interest is obvious when the liberty at stake is as substantial as the punishment that follows a Capital Murder conviction. The Private interest in this case weighs heavily.

### 2. Interest of the State

The Courts have looked at two areas when reviewing the state's interest in an *Ake* analysis, judicial economy and burden to provide the expert. *Rey,* at 339. In *Rey,* the

10

Appellant asked for a pathologist to aid in building a defense to a Capital Murder charge out of Randall County, Texas. *Rey,* at 335-36. The defendant filed the motion for expert assistance prior to trial, and the trial court ruled on the motion after hearing the testimony of the state's pathologist. *Id.* In review, the Court of Criminal Appeals found that because there was a pathologist available in a "one-day" drive to Dallas, Texas, and that his fee was expected to be $2,200, that the state's interest in judicial economy was not substantial in light of the their overlapping interest in the accuracy of the proceeding. *Rey,* at 339.

In this case, the Appellant had acquired an expert to assist in building a defense on a Capital Murder charge. RR6-47. This expert was able to evaluate the defendant within 3-4 days. RR6-47. There was no funding asked of the Court at the time the motion was filed or ruled upon. Appellant's Motion for an Intellectual Disability Evaluation and Continuance was filed and ruled on twice prior to the first witness taking the stand, and again at the introduction of the Appellant's confession. RR2-52, RR4-12, RR6-46-50, In order to provide the defendant due process, the Trial Court in *Rey* would have had to continue trial for a brief period to allow the expert to review the case. This is true, because the Trial Court ruled on the Motion for Pathologist during trial. *Id.* at 335-336. The Appellant's Motion for Continuance does not separate this case from the decision in *Rey.* Considering the state's concurrent interest with the defendant in the accuracy of the proceedings, the state's interest in judicial economy is not-substantial in light of the Appellant's interest. The Appellant's interest weighs more heavily than the interest of the state as in *Ake* and *Rey.*

11

## 3. Importance of Expert Testimony – Threshold Showing

In the third prong of the *Ake* test, the Defendant must make a threshold showing that the issue for which the expert is to testify or evaluate is "likely to be a significant factor" at trial. *Ake v. Oklahoma*, 470 U.S. 68, 82-83, 86. In *Rey*, the Court found the issue to "likely be significant" as it went to the core of the Appellant's defensive theory. *Rey*, at 340-42. In cases where the threshold showing was not met under the *Ake* test, the Defendant typically failed to articulate a defensive theory and why the defensive expert would aid in establishing that theory. *Id.* at 341; *Moore v. Kemp*, 809 F.2d 702, 717-18 (11th Cir. 1987) (defendant's request not sufficient where he did not advise court of type of expert sought or role expert would play, he did not offer name of expert that might be available or state what the expert could have contributed to defense); *State v. Edwards*, 868 S.W.2d 682, 698 (Tenn. Crim. App. 1993) (defendant failed to make sufficient showing for DNA expert where motion not supported with affidavit or other proof showing particular need, did not disclose defense theory or discuss issue of misidentification). In cases where the defendant has shown that they were entitled to the use of an expert, the defendant generally has made their defensive theory clear to the court, and has supported that assertion with factual allegations on the reasons that the expert could assist in establishing that theory. *Rey*, at 341-342. Thus, to establish that the Appellant was entitled to an expert the Appellant must show that 1) a defensive theory was articulated to the Trial Court with factual allegations on the reasons the expert could assist in establishing that theory and 2) how important the issue that the expert was going to discuss was to the underlying case.

12

**Defensive Theories Presented**

In this case, the defendant articulated two distinct defensive theories to the Trial Court with accompanying factual allegations on reasons that the expert could assist in establishing those theories. The Trial Court was notified that the expert assistance would be used to support a defense to the elements under Texas Penal Code § 7.02(b) – what the defendant "should have anticipated", and to show that the Appellant's waiver of *Miranda* was not knowing and intelligent.

## D. "Should have Anticipated" under Texas Penal Code 7.02(b)

### a. *Rule of Law – Texas Penal Code § 7.02(b)*

Under Texas Penal Code § 7.02(b), a defendant may be liable for a felony committed by another under these circumstances:

> "if in the attempt to carry out a conspiracy of one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was **one that should have been anticipated as a result of carrying out the conspiracy.**" (*emphasis added*).

Tex. Penal Code § 7.02(b).

The courts have interpreted the "should have anticipated" term as meaning that the secondary felony should have been anticipated by **this defendant** (*emphasis added*) at trial. *Anderson v. State,* 416 S.W.3d 884, 891 (Tex. Crim. App. 2013). The Court in *Anderson,* stated that the "should have anticipated" language in Texas Penal

13

Code § 7.02(b) is synonymous with *Pinkerton* liability in Federal criminal cases. *Id.* Under *Pinkerton* liability, the government must prove, among other things, that "**the defendant** (*emphasis added*) could have reasonably foreseen that one or more of the co-conspirators might commit the crime." *United States v. O-Campo*, 973 F.2d 1015, 1021 (1st Cir. 1992). The jury charge in this case reflects this understanding of the "should have anticipated" language as it states that, Capital Murder "was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy." Supplemental Record – Page 5. The language of *Pinkerton*, this jury charge and Texas Penal Code § 7.02(b) make it clear that the defendant's personal characteristics may be taken into account when deciding if the defendant should have anticipated the secondary crime.[3] Any different interpretation of the statute would allow a defendant to be held criminally liable for Capital Murder based on criminal negligence.

This means that the jury would not decide if a reasonable, objective person should have anticipated the secondary felony's occurrence, but rather should the Appellant have anticipated its occurrence. Given the subjective standard of § 7.02(b), the defendant's mental slowness or mental retardation would have gone to shape his mental state in regards to what actions he "should have anticipated" the other co-conspirators undertaking during the aggravated robbery. Without this evidence, the jury was left to determine this element of the offense by asking what a normally

---

[3] The definition of recklessness in Texas sheds some light on interpreting the language of § 7.02(b). Reckless is defined under Texas Penal Code § 6.03(c) as when one is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. Reckless has been interpreted by the courts as the defendant being subjectively aware of the risk and still choosing to disregard it. *Williams v. State*, 235 S.W.3d 742 (Tex. Crim. App. 2007). This subjective standard makes any intelligence issues relevant in defending against that mens rea element. This is the least culpable mens rea element outside of criminal negligence.

functioning adult should have anticipated. With this evidence, the defendant would change the standard that underlies party liability by taking into account his intellectual disabilities or mental slowness. The question would become should the Appellant, a person with an intellectual disability, have anticipated that the co-conspirators would commit murder during the course of the robbery. The expert opinion and evaluation would have been used to bolster this defensive theory as stated by Trial Counsel during his presentation of the motion.

### b. *Defensive Theory Articulated to the Court*

The Appellant articulated this defensive theory on two separate occasions to the Trial Court before their denial of the Appellant's motion for an intellectual disability evaluation by a neuropsychologist. The first instance occurred during the Appellant's second pre-trial hearing on April 8, 2010. When arguing for the Motion, Trial Counsel for Appellant stated that:

"it would be a minor inconvenience to the jury if I could get this [evaluation] done, but it would truly impact the defense on both the statement and the general intent, which is critical to this. We agree that Mr. Washington was there. You know, there's not an issue with that. The issue is what he knew and understood and intended that evening. His intellectual disability goes to the heart of that. And I respectfully urge the Court to reconsider its ruling."

RR4-8.

"I don't think it's going to make a difference to the dispensing of justice if we take a short break to get this done. And I believe I can get it done. If nothing else, the

15

IQ testing can be done, and I can get the raw scores back to the Court as -- rather than a finished report and, if necessary, have the expert come in and testify."

RR4-9.

Later on in that same hearing, Trial Counsel again articulated for the Trial Court the defensive theory that he wished to try the case on, and how a neuropsychologist's evaluation could aid in that defense:

"But I don't think that it's beyond pale to simply, in an abundance of caution, check to make sure that this man is in full possession of his faculties when we're about to hear whether he knowingly and voluntarily waived them and when we're about to decide what he would find foreseeable, because that's the test. Not that it's that person in that circumstances, including whether or not he's intellectually disabled. It's not an objective standard. And that directly goes to the heart of our defense. I'm asking for no more than a few days. If I can't get it done, then I'll explain why I can't get it done, but I think the interest of justice would best be served by that."

RR4-11-12

The Appellant in this case clearly stated that the defensive expert would be used to aid in his defense of what was foreseeable under *Pinkerton* and Texas Penal Code § 7.02(b).

### c. *Likely to Be Significant at Trial*

From indictment to conviction there was only one issue for the jury to decide in this trial. That issue was whether the defendant should have anticipated that another

16

member of the robbery conspiracy would commit a murder in furtherance of that conspiracy. The importance of this issue was divulged to the Trial Court prior to his denials of the Appellant's Motion for an Intellectual Disability Evaluation.

During the Appellant's second hearing on the Motion for an Intellectual Disability Evaluation, Trial Counsel gave notice to the Court that he had no issue with the Defendant being present at the crime. Trial Counsel did not dispute that the Appellant was present, Trial Counsel pointed out that the case turned on the Appellant's mental state. RR4-8 (noting that the evaluation goes to the heart of that defense). In response to Trial Counsel's argument the State revealed their intention to prove the defendant's guilt under Texas Penal Code § 7.02 (b):

"Mr. McCann and I disagree as to the intent that is at issue in this case. The intent -- the defendant's intent at issue is the intent to participate in the robbery part of the capital murder, not -- I'm not required to prove that the defendant intended the victim die that night. I will prove beyond a reasonable doubt that it was Robert Castillo, the co-defendant who has been convicted, that it was he -- he was the one who intended to commit -- to kill the complainant. He's the one who had the specific intent that night to kill the complainant and that the defendant in this case, under the law of conspiracy, agreed to participate in the robbery. And I will prove that it was in furtherance -- the robbery -- the murder was in furtherance of the robbery and the **murder was also foreseeable to the defendant.**"
RR4, 6-7.

The state advised the Trial Court here that the specific intent of the Appellant would not be at issue in this case. Texas Penal Code § 7.02(a)(2) and the Capital Murder

17

statute require specific intent to be found guilty of Capital Murder. At this stage, the Trial Court was put on notice by the prosecution that § 7.02(b) was the statute that would be used to garner a conviction. This statute and a defense to the "should have anticipated" language became the central focus and issue in the case at that time.

In that same hearing and in response to the State, the Defendant again talked of the need for an expert under these facts, stating that it was imperative to evaluate the Appellant before trial started to determine what was foreseeable to the Appellant. RR4-11. Further, Appellant stated that the subjective standard of § 7.02(b) made it imperative that we have an expert evaluate for any intellectual disabilities.

After hearing argument from both sides on the Motion for an Intellectual Evaluation the Trial Court denied the motion for a psychological evaluation.

As the trial went forward, it became apparent that party liability under Texas Penal Code § 7.02(b) was in fact the central issue in the case as stated in the Motion for an Intellectual Disability Evaluation. The closing arguments from the Appellant and the State reiterated their understanding of the ultimate issue in this case. In closing argument, the state advised the jury that they should go through a two part analysis to arrive at a conviction for capital murder. RR7-133-137. One, the jury should answer the question on whether the defendant was a party to the underlying robbery. RR7-133. This is undisputed, and the Appellant agreed that a guilty verdict on aggravated robbery is appropriate in this case. The second part of the state's test for the jury was to answer whether the defendant met the requirements of Texas Penal Code § 7.02(b). RR7-133-136. The state expounded on the importance of § 7.02(b) by stating the jury should "focus on" this section, because that is "why we are here". R7-136-137. The state then

went one step further and noted that they had no burden to prove that the defendant had the specific intent to do anything other than commit a robbery. RR7-133. For the state, specific intent was "not at issue in this case." *Id.* Texas Penal Code § 7.02(b) is the only viable theory for the prosecution if specific intent is not at issue outside the underlying robbery. All other theories of party liability require a specific intent on part of the Appellant in order to be guilty of the actions of co-conspirators. The State solidified their dependence on this theory by stating that from opening statement to now, the language in § 7.02(b) has been the issue in this case. RR7-137.

Defense Counsel built his defensive strategy around the fact that the defendant should not have anticipated that one of the co-conspirators would take the life of the robbery victim. The Appellant depended on distancing himself from the actions of his co-conspirator – defending against the "should have anticipated" language of § 7.02(b). This was evident when Defense Counsel stated in closing argument: "But here's the other truth: Christopher didn't kill him. He didn't agree to kill him. And no one could have foreseen that David Rodriguez was going to die that night, except maybe the mad man that did it."

### d. *Conclusion*

The defendant meets the threshold showing requirement of *Ake's* third prong. The third prong of *Ake* requires the defendant to show that information from the expert will likely be significant at trial. Appellate Courts have looked at two different areas when deciding whether this threshold requirement of significance has been met with the Trial Court Judge: Whether the Defendant laid out 1) a defensive theory and how the

19

expert would aid in that theory, and 2) how important the issue that the expert was going to discuss was to the underlying case.

Here the defendant laid out to the judge that he wanted an evaluation for intellectual disability to support a defensive theory related to the conspiracy allegation by the State. More specifically, to go towards whether the defendant should have anticipated that a co-conspirator would commit capital murder during the robbery. Appellant articulated not only the reasons for his concerns about the defendant's mental ability, but also outlined the subjectivity of the § 7.02(b) standard that was the crux of the State's case and how an evaluation could procure valuable evidence to fighting the "should have anticipated" element. Trial Counsel articulated the defensive theory he wished to expound upon, and how the expert could assist in that theory.

Further, it cannot be overstated how central and crucial the "should have anticipated" language was during the prosecution of the Appellant. It was the crux of the prosecution's case from pre-trial motions through closing argument. During the oral motion for an evaluation prior to trial, the state conceded that § 7.02(b) would be the basis for their charge to the jury, and in fact, § 7.02(b) was the only theory that the prosecution laid out to the jury as a viable avenue for conviction in closing argument. This was the central issue to the case, and the importance of having expert testimony to combat that attack is apparent from the record.

The Defendant met his threshold requirement under *Ake* based upon his articulation of 1) his defensive theory under §7.02, 2) the way the expert would be used to assist in building that theory, and 3) articulating the importance of the "should have anticipated language" prior to the Trial Court ruling on the Motion.

20

### E. Motion to Suppress Defendant's Statement Under Miranda

#### a. *Rule of Law*

In *Miranda* v. *Arizona*, the Supreme Court outlined the framework for statements that are made to the state during custodial interrogation. The Court recognized that custodial interrogations, by their very nature, generate "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). In order to combat the inherent compulsion associated with custodial interrogation, *Miranda* imposed procedures that police must follow when dealing with an accused. *Moran v. Burbine*, 475 U.S. 412, 420 (1986). Notably, *Miranda* mandated that prior to the initiation of questioning, the accused must be fully informed of their rights to remain silent and to have counsel present. *Miranda,* at 468. Once the accused has been read his rights under *Miranda,* the accused must make a knowing, intelligent, and voluntary waiver of those rights for questioning to continue. *Id.* at 444, 475. The *Miranda* waiver has two distinct hurdles that must be crossed for the waiver to be effective. *Brewer v. Williams,* 430 U.S. 387, 404 (1977). First, the accused's waiver of his rights must be voluntary – a product of free and deliberate choice rather than intimidation or coercion. *Moran,* at 421. Second, the accused must have full awareness of both the nature of the rights he is waiving and the consequences of the decision to waive those rights. *Id.* Considering the "totality of the circumstances", both of these standards must be met before a court may conclude that an accused's *Miranda* rights had been waived. *Fare v. Michael C.,* 442 U.S. 707, 725 (1979).

21

When looking at whether an accused has full awareness of the nature of his rights and the consequences of the decision to waive those rights, a court must look at the particular facts and circumstances, including the background, experience, conduct, and education of the accused. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). All facts unique to the accused that have bearing on his comprehension of his rights are relevant in determining whether the waiver is knowing and intelligent. *Leza v State*, 351 S.W.3d 344. This would include lowered intellect, drug use, or other mental disorders. *Oursbourn v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008).

The state of Texas has codified *Miranda* in Texas Code of Criminal Procedure 38.22. Under Texas Code of Criminal Procedure 38.22(2)(a), an accused must be read five listed rights before any questioning by officers. Tex. Crim. Proc. Ann. Art. 38.22 Sec. 2(a). If the statement of the accused is video recorded then these rights must be read to the accused on recorder prior to questioning, and the accused must make a knowing, intelligent, and voluntary waiver of those rights. Tex. Crim. Proc. Ann. Art. 38.22 Sec. 3(2).

### b. *Articulation of the Defensive Theory to the Trial Court*

Appellant first brought to the Trial Court the need for an expert to aid in a 38.22 defense in the first hearing on the Appellant's Motion for Intellectual Disability and Competency Evaluation on April 7, 2010:

"And as this Court is aware, under Osbourne v. State, a person's mental fitness or intellectual disability is relevant to a 38.22 issue, which is the subject of a suppression motion before this Court. We would ask -- we have filed a motion for continuance, to which I have sworn, that we be set off for this Court to order an

22

intellectual disability evaluation, specifically IQ testing, and if necessary, adaptive deficit skills screening for Mr. Washington. I cannot, in good conscience, go forward without at least bringing this to the Court's attention."
RR2-51-52.

Trial Counsel stated that any intellectual disability would provide valuable evidence in the motion to suppress the defendant's statement. Further, Trial Counsel articulated that the Oursbourn issue would be the central issue in that motion. The Trial Court denied the evaluation and use of the expert at that time. RR2-50.

In the second hearing on Appellant's Motion for Intellectual Disability and Competency Evaluation, Trial Counsel again presented his plans to use the psychological expert and her evaluation to suppress statements made by the Appellant to officers:

"But looking at these things in totality, I want to point out that we're about to do today a motion to suppress where his intellectual abilities would be critical, if I had that information to my motion to suppress, and critical to a 38.22 instruction, or issue under Osbourne v. State. I think it's also crucial because it may inform his ability to sit there and follow along with the officer, understand his rights, and to knowingly, intelligently, and voluntarily waive them. Without that information in hand, I believe that I'm harmed in terms of being able to proffer to this Court a reason that his statement should not be in front of it."
RR4-6.

"But I don't think that it's beyond pale to simply, in an abundance of caution, check to make sure that this man is in full possession of his faculties when we're about to hear whether he knowingly and voluntarily waived them."

23

RR4-11.

Trial Counsel here continues to request a psychological evaluation in order to defend the Appellant against a confession coming into evidence that did not comply with the mandates in *Miranda* and Texas Code of Criminal Procedure 38.22. This is more important when it is made known that the voluntary, knowing and intelligent waiver of the defendant's *Miranda* rights was the main issue before the Trial Court in the Motion to Suppress. This motion was again denied, and the Trial Court did not allow the Appellant an opportunity to obtain the assistance of an expert. During the Motion to Suppress, the prosecution began using facts to bolster their position that the waiver was in fact intelligently made. RR4-34-37. The prosecution highlighted certain points that they saw important to showing that the defendant was lucid and acting as other intelligent people would in that situation. *Id.* In light of the State's argument, Defense Counsel again moved to have the defendant evaluated as he was unable to lay out the necessary facts to rebut the prosecution's position. RR4-34-37. This motion was again denied.

c. *Likely to be Significant at Trial*

The Appellant's statement to officers was likely to be significant at trial. The statement made by the defendant was a confession to the crime. The defendant laid out in his statement the exact facts and circumstances that led to the robbery and murder of the victim in this case. It should be apparent to most courts that confessions are important pieces of evidence, and many times, the only piece of evidence. Additionally, Appellant notified the Trial Court of the significance of the statement when he re-urged the motion to have the Appellant evaluated for an intellectual disability prior to the confession being admitted into evidence - Appellant stated that the motion had to be re-

24

urged now because the jury is about the see the most significant evidence in the case that will irreparably mold their decision making. RR5-47-48.

After reviewing the entire record, Defense Counsel's thoughts and presentations to the Trial Court were in accord with the actual evidence at trial. Without that statement, it is hard to see how the prosecution would have been able to convict the Appellant of Capital Murder. The State's Witnesses testified as follows:

a. Derrick Boggess testified first. Mr. Boggess was a local resident that lived in the neighborhood that was adjacent to the crime scene off of TC Jester and Fallbrook. Mr. Boggess testified that he saw a white Cadillac and a small dark sedan parked off of TC Jester around 12:30 AM on the morning of April 19, 2010 as him and his wife headed out to get something to eat. His wife called the authorities and reported a suspicious vehicle at that location.

*See* RR5-22-80.

b. Deputy Casey Bilinovich testified second. This officer was the one that responded to Ms. Borgess's call on the morning of April 19, 2010. She testified that as she turned onto TC Jester from Fallbrook she saw a White Cadillac run the stop sign while making a right turn onto Fallbrook. She gave chase to the vehicle. The White Cadillac fled from her, and ultimately wrecked into a post in a nearby neighborhood. The driver of that vehicle was the Appellant, who was apprehended at the scene. The passenger jumped over a wooden fence and escaped.

*See* RR5-80-132.

c. The third person to testify for the state was Sergeant Gary Smith. He testifies that he arrived on the crime scene off of TC Jester at 11:30 AM on the morning of April 19, 2010. Sergeant Smith laid out the crime scene for the jury, including the location of the victim's body. Further, he adds that he was able to connect the fleeing White Cadillac from the night before to this murder scene based on the call into dispatch from Ms. Borgess.

*See* RR5-132-170.

d. The fourth witness to testify was Investigator Quintanilla. This investigator testified to the crime scene and the forensics that were run on the victim's stolen white Cadillac. He confirmed no independent evidence to link the defendant to the crime. This investigator was the one that interviewed the Appellant during his confession, and laid the predicate for the entrance of State's Exhibit 3A – video recording of the confession.

*See* RR5-170-RR6-106.

e. Next, Marilyn Martinez testified. She is the victim's cousin in this case. She testified that she saw a dark colored sedan and her cousin's white Cadillac leave quickly from the front of her house on the night of April 18, 2010. She offered no other evidence to link the defendant to the crime.

*See* RR6-106-128.

f. Next, Mary Anzalone, MD testified. Doctor Anzalone verified that the death of the victim was in fact caused by the bullet wound.

*See* RR7-5-33.

g. The last witness to testify was Deputy Joe Noguera. Deputy Noguera attempted to reconstruct the crime scene to verify exactly how the victim was shot. He testified that the victim would have been on his knees, and the gun would have been close to the victim's head.

*See* RR7-33-116.

The only piece of evidence that was adduced at trial that affirmatively linked the Appellant to the crime of Capital Murder, or even the underlying Robbery, was that the Appellant was seen turning onto T.C. Jester in the victim's White Cadillac after the suspicious call by Ms. Boggess. This piece of evidence would have surely made the Appellant a suspect to the murder of the victim in this case, but it would have been insufficient on its own to support a conviction for Capital Murder. Everything about the underlying story in this case hinged on the confession of the Appellant. The prosecution understood as much when they put forward quote after quote of the Appellant's confession during their closing argument. The defendant's confession placed the defendant at the scene, laid out the agreement for the underlying robbery, and put forward all of the key evidence that the prosecution would use to show that the defendant should have anticipated that a murder could happen in furtherance of the robbery conspiracy. There is little dispute that the confession from the defendant is the key piece of evidence in the case against the defendant.

## 4. Overall Conclusion

The Due Process Clause of the United States Constitution guarantees that all defendants will have access to the raw materials necessary to build an effective defense. These raw materials often include the use of a defense expert to aid in challenging issues

27

in the case. Appellant in this case, requested the assistance of a neuropsychologist in diagnosing an intellectual disability. The results of that evaluation, and testimony of the expert, would have been used to bolster two distinct defensive theories -- challenge to the "should have anticipated" element in Texas Penal Code § 7.02(b) and to set the standard in answering whether the Appellant made a knowing and intelligent waiver of his *Miranda* rights. The importance of these two issues were revealed to the Trial Court along with the underlying facts of Appellant's intelligence issues and how the expert evaluation would be used to solidify Appellant's defense. Appellant attempted repeatedly to get the assistance of an expert, and repeatedly was denied access by the Trial Court. Visiting Judge Mallia was put in a difficult position with Appellant asking for a continuance so close to trial, however, the Due Process Clause requires access to these basic tools to insure the fairness of the trial. A neuropsychologist's assistance in this case, under these facts, was one of those basic fundamental tools. Without expert assistance, the fundamental fairness of this trial is called into question.

Appellant was denied access to an expert after a substantial need was shown, and thus, his Due Process rights were violated when the Trial Court refused to allow Appellant access to a neuropsychologist for an evaluation and possible testimony. Appellant has met all factors in the *Ake* test. This case should be remanded for a new trial where Appellant is allowed to build his defense with the aid of a neuropsychologist.

28

## POINT OF ERROR TWO

**WHETHER THE TRIAL COURT ABUSED THEIR DISCRETION WHEN THEY DENIED THE APPELLANT A HEARING ON HIS MOTION FOR NEW TRIAL**

## ARGUMENT AND AUTHORITIES

a. Rule of Law

A motion for new trial is a prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record. Tex. Rule App. Proc. 21.2. Texas Rule of Appellate Procedure 21.3 enumerates grounds where, if met by the defendant, the Trial Court must grant a new trial. Tex. Rule App. Proc. 21.3. However, these grounds are not exclusive. *See State v. Evans*, 843 S.W.2d 576, 578-79 (Tex. Crim. App. 1992); *State v. Read*, 965 S.W.2d 74, 77 (Tex. App.--Austin 1998, no pet.). The Trial Court has the discretion to consider matters not on the list provided in Texas Rule of Appellate Procedure 21.3 when deciding whether to grant a new trial. *Id.*

In hearing the motion for new trial, the trial court may receive evidence by affidavit or otherwise. Tex. Rule App. Proc. 21.7. If they are offered and admitted in evidence, sworn motions and affidavits may serve as proof of allegations for a new trial. *See McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985). The Defendant may also request that a hearing be held in order to adduce live testimony into evidence. Texas Rule of Appellate Procedure 21.7. A Hearing on a Motion for New Trial has two purposes. One, is to decide whether the case should be retried. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The second is to prepare a record for appeal should the motion be denied. *Id.*

A prerequisite to a hearing, and as a matter of pleading, motions for new trial must be supported by an affidavit of either the accused or someone else specifically showing the truth of the grounds asserted. *McIntire v. State,* 698 S.W.2d 652, 658 (Tex. Crim. App. 1985). However, the affidavit is not required to reflect every component legally required to establish relief, but the motion for new trial or affidavit must reflect that reasonable grounds exist for holding that such relief could be granted. *Reyes v. State,* 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). A defendant need only assert reasonable grounds for relief which are not determinable from the record in order to be entitled to a hearing. *Id.* To deny the defendant a hearing on an issue that is not determinable from the record would deny the Appellant their chance at receiving a new trial and of obtaining meaningful appellate review. *McIntire v. State,* 698 S.W.2d 652, 658 (Tex. Crim. App. 1985). When an accused does in fact present a motion for new trial raising matters not determinable from the record, upon which the accused could be entitled to relief, the trial judge abuses his discretion in failing to hold a hearing. *Reyes v. State,* 849 S.W.2d 812, 816 (Tex. Crim. App. 1993).

## b. The Trial Court Abused its Discretion in failing to grant the Appellant's request for a hearing in his Motion for New Trial

In order to find an abuse of discretion on the Trial Court's failure to hold a hearing on a motion for new trial, the appellant must show that: 1) the motion for new trial was timely filed, properly presented, and supported by a sworn affidavit, 2) the motion for new trial and accompanying affidavit notified the judge of a reasonable grounds that could entitle the defendant to relief, and 3) the issue raised is not determinable from the record. *Reyes v. State,* 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); *Trevino v. State,* 565 S.W.2d 938, 940 (Tex. Crim. App. 1978).

30

### a. *Motion was Timely Filed and Presented with Sworn Affidavit*

On April 10, 2014, the jury found the defendant guilty of Capital Murder, and the Trial Court sentenced the defendant to life in prison without the possibility of parole. CR-148. A notice of appeal was timely filed on April 10, 2014. CR-152. On May 9, 2014, the Appellant timely filed a Motion for New Trial with the 178th District Court of Harris County, Texas. CR-157. The Motion was presented to the coordinator of the Trial Court in compliance with Texas Rule of Appellate Procedure 21.6. *See* CR-171. Attached to the Motion for New Trial was an affidavit from Trial Counsel. The Motion for New Trial and supporting affidavit detailed the facts underlying the grounds for the Appellant's Motion for New Trial – notably, the Trial Court's 1) denial of Appellant's request to obtain an expert for assistance in building a defense under *Ake*, 2) denial of the Appellant's motion to continue so the defendant could be evaluated by that expert, and 3) denial of the Appellant's request for a competency trial. CR-157-166. The Appellant requested an oral hearing in order to expand the record with live testimony relating to the Appellant's intellectual disability that Trial Counsel had not been allowed to pursue during the trial. This request for a hearing was made to insure a correct decision was made in the Motion for New Trial and meaningful review could be obtained on direct appeal.

The Motion for New Trial was timely filed, properly presented to the Trial Court, and was supported by an affidavit from Trial Counsel detailing grounds for relief. This first prong of the analysis is met.

31

### b. *Appellant's Motion for New Trial and supporting affidavit notified the Trial Court of reasonable grounds for relief that were not determinable from the record*

#### i. Rule of Law

Texas Rule of Appellate Procedure 21.3 lays out a list of specific grounds that would entitle a Defendant to relief in a Motion for New Trial. Under 21.3(b), a defendant is entitled to a new trial if the Trial Court has committed a material error likely to injure the Defendant's rights. Further, the Trial Court is not limited to the eight areas located in Texas Rule of Appellate Procedure 21.3, and has discretion to grant relief in the Defendant's motion for new trial for other reasons. "For 130 years, our trial courts have had the discretion to grant a new trial in the interest of justice. Rule 21.3 does not provide an exhaustive list." *Taylor v. State*, 163 S.W.3d 277, 282 (Tex, App.—Austin 2005).

The Motion for New Trial and supporting affidavit detailed two distinct grounds, that could entitle the Defendant to relief and were not determinable from the record. Since the denial of the Appellant's Motion for a Competency Trial under 46B could be ascertained from the record, it is not argued in this section.

#### ii. Ground for Relief under *Ake v United States*

##### a. *Appellant notified the Trial Court of reasonable grounds that could entitle him to relief*

The first ground for relief in the Appellant's Motion for New Trial was a challenge under *Ake*. Prior to trial, Trial Counsel moved for an evaluation of the Appellant by a neuropsychologist in two hearings on his Motion for Intellectual Disability and Competency Evaluation. Trial Counsel re-urged this motion while

objecting to the prosecution's offer of the Appellant's confession in State Exhibit 3A. In the supporting affidavit, Trial Counsel detailed that days before trial the defendant had been unable to assist him in building a defense for his case. CR-165. Around that same time, information had been obtained from the family that the Appellant had been struck by a car at a young age, and had not been "right" thereafter. CR-165. Trial Counsel also details how expert testimony would have been used to aid in the defense of the Appellant at trial through defending against whether the defendant could reasonably foresee the actions of the co-conspirators, and whether the defendant's waiver of his *Miranda* rights were knowing, intelligent, and voluntary. CR-165. The attack under *Ake* detailed a claim that the due process rights of the defendant had been violated by the Trial Court when they failed to provide expert assistance for use at trial.

This issue falls under relief that can be sought under Texas Rule of Appellate Procedure 21.3(b) – a material error that is likely to injure the defendant's rights. At the very least, a violation of the Appellant's Constitutional Rights as stated in *Ake* should fall under the Court's discretion as other grounds for relief made in the interest of justice. This issue was properly raised to the Trial Court, and detailed reasonable grounds that could have entitled the Appellant to relief.

### b. *The Ake Issue is not Determinable from the Record*

In determining a Due Process claim under *Ake*, the main issue is how important the scientific issue is in the case, and how much help a defense expert could have given. *Rey v. State*, 897 S.W.2d 333, 338 (Tex. Crim. App. 1995).

Given the standard of the Constitutional claim under *Ake,* this issue was not determinable from the trial record. The Trial Court had not allowed for the Appellant to be evaluated for an intellectual disability prior to his conviction. To determine whether the Defendant's Due Process rights were violated the Trial and Appellate Courts must look at how important the scientific issue is in the case and how much help the defense expert **could have been** (*emphasis added)* to the Appellant's case at trial. Though the Appellant was able to make a threshold showing about the importance of the issue, he was unable to give the concrete evidence that is needed to bolster the *Ake* claim. In the Appellant's Motion for New Trial, Trial Counsel included affidavits alleging the facts within his knowledge that gave rise to the possibility of an intellectual disability, but these statements pale in comparison to the power that live testimony on the issue could have garnered. The Trial Court in the Motion for New Trial and the Appellate Courts would have been greatly aided in hearing more concrete information on the subject of Appellant's perceived intellectual disability.

The Motion for New Trial requested an oral hearing so that the record could be expanded with more tangible information on the Appellant's intellectual state. Without this additional evidence, the Trial Court in the Motion for New Trial and the Appellate Court on appeal cannot determine the validity of the Due Process issue raised under *Ake.* An evaluation and further evidence on any intellectual disability was needed in order to rule on the *Ake* issue and to expand the record for Appellate Courts to make a decision on a possible violation of the defendant's constitutional rights. Given the two goals of the Motion for New Trial, to decide if the case needs to be retried and to expand the record for meaningful appeal, the Trial Court should have granted the Appellant's request for a

34

hearing on the Motion for New Trial. As it stands, the Appellate Courts are stuck to ponder if a true intellectual disability exists in the Appellant. This evidence should have been allowed to be put forward in a live hearing. This issue is not determinable from the record, and a hearing should have been granted to aid the Trial Court in ruling on the Motion for New Trial and the Appellate Courts in deciding this appeal.

### iii. Ground for Relief Based on Trial Court's Denial of Appellant's Motion for Continuance

#### a. *Appellant Notified the Trial Court of Reasonable Grounds for Relief*

In order for the defendant to be granted a new trial based on the Trial Court's denial of a Defendant's Motion for Continuance, the defendant must show that the trial court's denial was an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). *Heiselbetz v.* State, 906 S.W.2d 500, 517 (Tex. Crim. App. 1995). To show an abuse of discretion, the Appellant must show that: 1) the Trial Court erred in not granting the motion for continuance, and 2) the defendant was actually harmed by that ruling. *Heiselbetz v.* State, 906 S.W.2d 500, 517 (Tex. Crim. App. 1995). A trial court will err in not granting a motion for continuance if the case for a continuance was so convincing that no reasonable judge would have made that ruling in light of court scheduling and the interest of the state. *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010). The appellate court will find harm in the denial of a motion to continue "'only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had.'" *Id.*

In the Motion for New Trial and the supporting affidavit the facts relating to the Appellant's Motion for Continuance were outlined for the Trial Court. CR-157-165.

35

Trial Counsel asked for a continuance at various stages of the proceedings in order to obtain expert assistance to evaluate the Appellant for an intellectual disability. *See* RR4-80, RR2-52, RR6-50. Trial Counsel articulated the exact defensive theories that the expert's testimony would aid in establishing. Trial Counsel notified the Trial Court that the continuance would only take a few days and that a neuropsychologist had already been selected who was available to conduct the evaluation.

If the Trial Court did abuse their discretion in denying the Appellant's Motion for Continuance, this would be a material error that was likely to injure the rights of the defendant, entitling the Appellant to relief under 21.3(b). In addition, any error in the denial of the Appellant's Motion for Continuance could have entitled the Appellant to relief in the interest of justice outside of the grounds listed in Texas Rule of Appellate Procedure 21.3. The Appellant notified the Trial Court of reasonable grounds that could entitle the Appellant to relief.

### b. *The Motion for Continuance Issue was not Determinable from the Record*

A Trial Court's "Denial of a Motion for Continuance will be found an abuse of discretion on appeal only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had. This showing can ordinarily be made only at a hearing on a motion for new trial, because almost always only at that time will the defendant be able to produce evidence as to what additional information, evidence or witnesses the defense would have had available if the motion for delay had been granted." *Gonzales v. State*, 304 sw3d 838, 842-843 (Tex. Crim. App. 2010).

36

In *Gonzales*, the defendant asked for an expert to assist in building his defense in a child sexual assault case. *Id.* at 840. Specifically, the defendant argued that an expert was needed to review the medical records of the child victim in that case. *Id.* at 841. The defendant's request for a medical expert was made the day of trial, and the trial court denied a motion for continuance to allow the expert to prepare for trial. *Id.* After conviction, the defendant filed a motion for new trial requesting an oral hearing to develop the harm related to the defendant's allegation that the Trial Court abused their discretion in denying the motion to continue. *Id.* at 841-842. The Trial Court denied the motion for new trial without a hearing.

The Court of Criminal Appeals held that the Trial Court did not abuse its discretion by ruling on the Motion for New Trial without a hearing. The Court in *Gonazales*, stated that the Trial Court had to make a determination on if there was error in the denial of the Defendant's Motion for Continuance before the harm analysis was justified. *Id.* at 843-843. If the Judge found no error in the denial of the continuance then the defendant would not need to develop harm in the second part of the analysis. *Id.* Put differently, the Trial Court would never get to the harm analysis, and therefore, the issue could be determinable from the record without live testimony. *Id.* In so finding, the Court of Criminal Appeals emphasized that continuances based on the absence of a witness require the defendant to detail the due diligence that was undertaken in procuring the witness, and why they were unable to request the witness until the day of trial. *Id.* In *Gonzales*, counsel for the defendant had been on the case for 8 months and gave no explanation for waiting until the day of trial before requesting assistance from an expert and a continuance. *Id.* at 841-843.

This case differs from *Gonzales* in some very important aspects. In this case, during the motion for continuance as well as the motion for new trial, the defendant detailed the exact reasons behind the late request for expert assistance and why the motion for continuance was filed on the day of trial.[4] CR-157-165. The Trial Court was put on notice that the issues detailed in the Motion for Continuance and Motion for New Trial had come to Trial Counsel's attention just a few days before trial. Further, Trial Counsel asked for a four day continuance in order to have the defendant evaluated by a psychologist that had already been contacted. Given the magnitude of the allegations made by the Appellant in regards to the need for expert assistance for his defense in a Capital Murder trial, a four day continuance should greatly override the interest that the state has in a prompt trial or the Court's scheduling. The case made by Trial Counsel was so convincing that no reasonable trial judge would have not granted the motion to continue in order to have the defendant evaluated. It was a small price to pay for assurance in the accuracy of a Capital Murder prosecution. The Trial Court erred in denying the Appellant's Motion for Continuance, and thus, a harm analysis was needed in order to rule on the merits of this issue in the Motion for New Trial.

Once it is found that the Trial Court erred in denying a Motion for Continuance, the Trial Court must base the viability of this ground for relief on the presence of actual harm to the Appellant. This prong of the test cannot be determined from the record as actual harm would require knowledge of what the defensive expert would have been able to put

---

[4] Trial Counsel notified the Trial Court that the family did not come forward with the accident where Appellant was hit by a taxi until a few days before trial, because they were embarrassed of his slowness and did not want to be viewed as "crazy". RR4-8-9. Trial Counsel advised the Trial Court of people's reluctance to come forward with issues dealing with mild retardation and intellectual disability. RR6-49. *See Point of Error Three at 44-45 in this brief for specific facts before the judge on the Appellant's Intelligence Issues.*

into evidence at trial. The defendant must be allowed to put forward additional evidence relating to his intellectual disability in order to show the actual harm that was caused by the denial of his motion for continuance. Without these facts, the two purposes of a Motion for New Trial are frustrated: deciding if the case should be retried and expanding the record for a meaningful appeal to this Court.

The Motion for New Trial and supporting affidavit raised a reasonable ground for relief in relation to the Trial Court's denial of the Appellant's Motion for Continuance. This issue was not determinable from the record itself, as the Trial Court nor the Appellate Court can ascertain the actual harm to the Appellant without more evidence. The Trial Court abused their discretion in not granting the defendant's request for a hearing in his Motion for New Trial to aid the Trial Court and this Court in their review of this issue. Without the hearing, the Appellant is now unable to raise the Motion for Continuance issue on appeal because he was denied the right to expand the record to show harm.

### c. Conclusion

A Trial Court Judge abuses their discretion if they deny a defendant's request for an oral hearing with live testimony on a Motion for New Trial if: 1) the motion for new trial was timely filed, properly presented to the Trial Court, and supported by a sworn affidavit, 2) the motion for new trial and accompanying affidavit notified the Trial Court of a reasonable ground that could entitle the defendant to relief, and 3) an issue is raised that is not determinable from the record. The Motion for New Trial was timely filed and

properly presented to the Trial Court with an accompanying sworn affidavit that laid out issues for relief.

The Motion for New Trial notified the Trial Court of a reasonable ground that could entitle the Appellant to relief. Those grounds for relief were a violation of the Appellant's Due Process rights under *Ake* – the Trial Court erred in denying Appellant access to an expert that could assist in his defense; and, the Trial Court's error in not granting the defendant's Motion for Continuance. Both of these issues would allow the Trial Court to grant relief under 21.3(b) in that they were material errors that are likely to injure the rights of the defendant. Given the magnitude of the allegations, the Trial Court was also well within their discretion to grant a new trial on grounds not listed under Texas Rule of Appellate Procedure 21.3 in the interest of justice.

Both of the issues presented were not determinable from the record. To properly present the issues, the defendant needed an oral hearing with live testimony to expand on the intellectual disability issues that were at the core of each of these arguments. In order to show "how much help an expert could have given", the Trial Court is required to conduct an analysis similar to harmful error. The Trial Court would have to know what the expert would have added to the defense to answer a key question in *Ake*. Without live testimony and an expansion of the record, the Trial Court could not make their ruling on the Motion for New Trial and this Court is left with unanswered questions. The same is true for the conventional harm analysis that is required from the Trial Court to rule on the issue relating to the Trial Court's denial of the Appellant's Motion for Continuance. Without a hearing, neither Court can answer the question of whether the Appellant was prejudiced or harmed by the absence of additional time to prepare for trial.

40

The observations from Trial Counsel seen in his affidavit pale in comparison to a full evaluation of the defendant to determine the presence of an intellectual disability. This information was needed to rule appropriately on the Motion for New Trial and for the Appellate Courts to rule on the issues in this appeal. The Trial Court Judge abused his discretion when he denied the defendant an oral hearing with live testimony in his Motion for New Trial.

## POINT OF ERROR THREE

### THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED THE APPELLANT'S REQUEST FOR A COMPETENCY TRIAL UNDER TEXAS CODE OF CRIMINAL PROCEDRURE 46B

## ARGUMENT AND AUTHORITIES

a. Rule of Law

A person whose mental condition is such that he lacks the capacity to understand the nature of the proceedings against him or to help to build a defense cannot be put to trial. *McDaniel v. State*, 98 S.W.3d 704, 709 (Tex. Crim. App. 2003). Putting an incompetent person to trial violates the due process rights of the Defendant. *Id.* Under the United States Constitution and the State of Texas statute, a defendant is not competent to stand trial unless he has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him. *Turner v. State*, 422 S.W.3d 676, 689 (Tex. Crim. App. 2013); Tex. Crim. Proc. Ann. Art. 46B.003(a). The Defendant must meet both prongs of the test to be competent to stand trial as the defendant's ability to rationally assist in his defense is indispensable to his competency. *See Turner*, at 689.

41

To protect the due process rights of the Defendant, the trial court is obligated to inquire into the accused's competency once the issue is sufficiently raised. *Id.* A mere suggestion of incompetency is sufficient to raise the issue. *Turner,* at 692. Once the issue of the defendant's competency to stand trial has been suggested, the court shall determine by "informal inquiry" whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. Tex. Code Crim. Proc. Ann. art. 46B.004(c) (Vernon Supp. 2006). If there is in fact some evidence from any source to suggest that the defendant **may** *(emphasis added)* be incompetent to stand trial then the Trial Court shall order a competency hearing. *Turner,* at 692. To make the determination if some evidence exists, the Trial Court must put aside all competing evidence that suggests competence, and decide if more than a scintilla of evidence exists that may rationally lead to a conclusion of incompetency. *Id.* If this standard is met then the Trial Court must order a competency trial. *Id.* If a court holds a trial to determine whether the defendant is incompetent to stand trial, on the request of either party or the motion of the court, a jury shall make the determination. Tex. Code. Crim. Proc. Ann. art. 46B.051(a).

Trial Counsel in this case filed a Motion for an Intellectual Disability and Competency Evaluation and a Motion for a Contested Competency Trial under Texas Rule of Criminal Procedure 46B. CR-130, CR-136. Appellant also made numerous suggestions to the Trial Court relating to his concerns about the competency of the Appellant throughout the proceedings as detailed in the procedure facts portion of this brief. These motions and oral assertions made to the Trial Court were sufficient to raise the issue of competency triggering an informal inquiry by the Trial Court. The Trial

42

Court made this informal inquiry in two hearings where the Appellant's family testified regarding the Appellant's intelligence issues, and affidavits of the Trial Counsel and his co-counsel's observations were presented to the Trial Court and put in the Clerk's Record on Appeal. RR2, RR4, CR-142. The only issue being contested is whether there was more than a scintilla of evidence that the Appellant did not have sufficient present ability to consult with Trial Counsel with a reasonable degree of rational understanding, such that the Trial Court abused its discretion in not granting a competency trial.

### a. The Trial Court Abused its Discretion by Not Granting the Appellant's Request for a Competency Trial under Texas Code of Criminal Procedure 46B

During the two hearings on the Appellant's Motion for Intellectual Disability and Competency Evaluation, the Appellant put forward facts relating to his intelligence issues. This evidence came by way of testimony from the Appellant's family and affidavits from Trial Counsel. The evidence is as follows:

1. Appellant never finished High School. RR2-9.

2. Appellant had issues with his memory. RR2-18.

3. At four or five years old, Appellant was struck by a taxicab while riding his bicycle. This incident caused the Appellant to be hospitalized for two days for head injuries. RR2-34.

4. Family members must repeat simple instructions to the Appellant over and over before he understands. RR2-23.

5. Appellant is easily influenced by others and fails to think for himself. RR2-26.

43

6. Appellant is unable to live on his own at the age of 40, as he is unable to do the simple tasks it would take to maintain a residence. RR2-38.

7. Growing up the Appellant's nickname was "dodo" due to his low intelligence and slowness. RR2-48.

8. Appellant was unable to actively participate in Jury Selection as seen by the notes that he took during the process. CR-135.

9. Appellant is unable to do simple arithmetic like adding two numbers. RR4-69.

10. Appellant repeatedly showed Trial Counsel an inability to comprehend the defenses available, the impact of his statement, or his ability to testify on his own behalf.

CR-137.

11. Appellant would respond "10 minutes" to any fact scenario regarding the case at times when they could not have been anywhere near ten minutes. CR-142.

12. Appellant would ask the same question over and over to Trial Counsel after Trial Counsel had answered it in that same conversation. CR-143.

13. Appellant would agree with anything that was presented to him by Trial Counsel during trial preparation. CR-143.

14. Appellant could not aid in building a time line in his defense. Trial Counsel asked Appellant when he arrived, prompting that is was 55 minutes after 8:00. Appellant would say 9:30. CR-143.

15. During Voir Dire, Appellant's only actions were to repeatedly ask if the Jury would sentence him. CR-143.

A defendant is not competent to stand trial if he has an insufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or he does not have a rational as well as factual understanding of the proceedings against him. *Turner v. State,* 422 S.W.3d 676, 689 (Tex. Crim. App. 2013); Tex. Crim. Proc. Ann. Art. 46B.003(a). Evidence relevant to these issues includes whether a defendant can (1) understand the charges against him and the potential consequences of the pending criminal proceedings; (2) disclose to counsel pertinent facts, events, and states of mind; (3) engage in a reasoned choice of legal strategies and options; (4) understand the adversarial nature of criminal proceedings; (5) exhibit appropriate courtroom behavior; and (6) testify. *Morris v. State,* 301 S.W.3d 281, 286-87 (Tex. Crim. App. 2009).

The facts laid out before the Trial Court prior to the ruling on the Appellant's Motion for a Competency Trial show much more than a scintilla of evidence that the Appellant did not have the present ability to consult with Trial Counsel with a reasonable degree of understanding. The Appellant was unable to disclose to Trial Counsel relevant facts and events in a manner that made sense. When prompted to recall times for a time line or events as they happened, Appellant could not relay this information in a coherent manner. Appellant was also not able to engage in reasoned choice in regards to presented legal strategies. He failed to understand or follow the defenses as they were laid out in front of him, and did not understand why his parents would not be testifying in certain proceedings. CR-143. The entire process seemed to overwhelm Appellant's ability to function. Further, Appellant was not engaged during jury selection even when prompted

45

for assistance by his Trial Counsel. He simply sat and repeated non-pertinent questions to Trial Counsel. Most importantly, Appellant was not in a condition to testify on his own behalf. He would agree with anything that was stated to him, and was not coherent enough to tell the story of what happened on the night in question. He was not able to do the one thing that could have benefitted him the most in his trial - tell his side of the story.

## b. Conclusion

After hearing all of the above evidence, the Trial Court had to make a decision on whether there was "more than a scintilla of evidence that may rationally lead to a conclusion of incompetency." *Turner*, at 692. Under Texas Code of Criminal Procedure 46B, the Trial Court must give a competency trial to the defendant if this standard is met. If he does not, then the Trial Court has abused its discretion. *Turner*, at 692. The evidence before the Trial Court was much more than a scintilla and went to show that Appellant was not able to aid in building a defense. This inability to consult with Trial Counsel with a rational understanding is at the core of competency. This is even more important when a defendant is unable to assist in a trial for Capital Murder. The Trial Court abused its discretion by denying Appellant's Motion for a Competency Trial in this case as there was much more than a scintilla of evidence that would rationally lead to a conclusion of competency.

46

## PRAYER FOR RELIEF

For the reasons herein alleged, Appellant respectfully requests this court reverse the judgment of the Trial Court and remand the case for a new trial on the merits, or remand the case to the Trial Court for a hearing on the Motion for New Trial.

WENDELL A. ODOM, JR.
Texas Bar # 15208500
440 Louisiana, Suite 200
Houston, TX 77002
(713) 223-5575
(713) 224-2815 (FAX)

Attorney for Appellant
CHRISTOPHER WASHINGTON

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served this document on all other parties, which are listed below on January 28, 2015, as follows:

Devon Anderson
Harris County District Attorney
Appellate Division
1201 Franklin Street, Suite 600
Houston, Texas 77002
Attorney for the State of Texas
By:    Electronic Transmission

WENDELL A. ODOM

47